**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS**

| | |
|---|---|
| YELLOW CORPORATION, YRC INC. (d/b/a YRC FREIGHT), USF HOLLAND LLC, NEW PENN MOTOR EXPRESS LLC, and USF REDDAWAY INC., <br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS NATIONAL FREIGHT INDUSTRY NEGOTIATING COMMITTEE, TEAMSTERS LOCAL NO. 696, TEAMSTERS LOCAL NO. 795, and TEAMSTERS LOCAL NO. 41,<br><br>Defendants. | CIVIL ACTION<br>CASE NO. 6:23-CV-01131-JAR-ADM<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

INDEX OF EXHIBITS .................................................................................................................. v

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 3

      I.       The Parties ................................................................................................................ 3

      II.      The District of Kansas Litigation............................................................................ 4

      III.     The Chapter 11 Case ................................................................................................ 6

ARGUMENT ................................................................................................................................. 7

      I.       This Case Is a Case or Proceeding Under Title 11 ................................................. 8

      II.      This Case Should Be Transferred to the Bankruptcy Court in the Interest of Justice ............................................................................................................... 9

      III.     This Case Should Be Transferred to the Bankruptcy Court for the Convenience of the Parties and Witnesses........................................................... 13

CONCLUSION............................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                     **Page(s)**

*Ackerman v. Eber*
  *(In re Eber)*, 687 F.3d 1123 (9th Cir. 2012) ..........................................................................................11

*Bennett v. FCA US LLC*,
  No. 2:17-CV-00665-RJS, 2018 WL 748505 (D. Utah Feb. 7, 2018) ..................................9, 10

*Breen v. Guttman*
  *(In re Breen)*, No. 02-58017-RG, 2007 WL 1385520 (D. Md. May 8, 2007) ..........................9

*City of Liberal v. Trailmobile Corp.*,
  316 B.R. 358 (D. Kan. 2004) ..........................................................................................8, 11, 13

*Harwell v. Hutton*
  *(In re Harwell)*, 381 B.R. 885 (Bankr. D. Colo. 2008) ..............................................................8

*Larkin v. Bank of Am., N.A.*,
  Civ. Act. No. 15-1151-MLB, 2015 WL 5252637 (D. Kan. Sept. 9, 2015) ...............................8

*Mar. Elec. Co. v. United Jersey Bank*,
  959 F.2d 1194 (3d Cir. 1991) .....................................................................................................8

*Myers v. Doe*,
  Civ. Act. No. 9:04-CV-0270, 2006 WL 3392692 (N.D.N.Y. Nov. 22, 2006) ........................12

*Quick v. Viziqor Sols., Inc.*,
  No. 4:06CV637SNL, 2007 WL 494924 (E.D. Mo. Feb. 12, 2007) .........................................12

*Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*,
  No. C-06-04693 JCS, 2008 WL 425638 (N.D. Cal. Feb. 14, 2008) ................................... 9-10

*SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*
  *(In re 1111 Prospect Partners)*, 204 B.R. 222 (Bankr. D. Kan. 1996) ......................................8

*Think3 Litig. Tr. v. Zuccarello*
  *(In re Think3, Inc.)*, 529 B.R. 147 (Bankr. W.D. Tex. 2015) .......................................... passim

*In re Yellow Corp.*,
  No. 23-11069 (Bankr. D. Del.) ........................................................................................ passim

**Statutes**

28 U.S.C. § 1412 ............................................................................................................... passim

Labor Management Relations Act Section 301 ............................................................................12

**Other Authorities**

D. Del. Am. Standing Order of Reference Re: Title 11 (Feb. 29, 2012) .......................................8

## INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | U.S. Dep't of Lab., Off. of Lab.-Mgmt. Standards, File No. 000-093, Teamsters Annual Report (May 12, 2023) |
| 2 | Transcript of Mot. for Temporary Restraining Order (July 21, 2023) |
| 3 | Decl. of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corp., in Supp. of Debtors' Chapter 11 Pets. & First Day Mots., Bankr. Case, Dkt. 14 |
| 4 | Chapter 11 Voluntary Pet. for Non-Individuals Filing for Bankr., Bankr. Case, Dkt. 1 |
| 5 | Aug. 9, 2023 Order (I) Directing Joint Admin. of Ch. 11 Cases & (II) Granting Related Relief, Bankr. Case, Dkt. 169 |
| 6 | Aug. 10, 2023 Interim Order (I) Authorizing the Debtors to (A) Use Cash Collateral, & (B) Grant Liens & Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, & (IV) Granting Related Relief, Bankr. Case, Dkt. 181 |
| 7 | Am. Notice of Agenda of First Day Matters Scheduled for Hr'g on Aug. 9, 2023 at 3:00 p.m. (Eastern Time), Bankr. Case, Dkt. 149 |
| 8 | Notice of Appointment of Committee of Unsecured Creditors, Bankr. Case, Dkt. 269 |

Plaintiffs Yellow Corporation, YRC Inc. (d/b/a YRC Freight), USF Holland LLC, New Penn Motor Express LLC, and USF Reddaway Inc. (collectively, "Yellow" or the "Company") submit this memorandum of law in support of their motion to transfer this case, under 28 U.S.C. § 1412 ("Section 1412"), to the U.S. Bankruptcy Court for the District of Delaware, where each of the plaintiffs filed a Chapter 11 petition on August 6, 2023.

## INTRODUCTION

On June 27, 2023, Yellow commenced this action against defendants International Brotherhood of Teamsters ("IBT"), Teamsters National Freight Industry Negotiating Committee ("TNFINC"), and three local unions affiliated with IBT (the "Local Unions" and, together with IBT and TNFINC, the "Union") to recover for defendants' breaches of the collective bargaining agreement between Yellow and the Union (the "NMFA"). On July 21, 2023, Yellow sought a temporary restraining order and preliminary injunction barring the Union from striking Yellow. During that hearing, Yellow explained to the Court that, as a result of the Union's refusal to negotiate with Yellow concerning the implementation of the Company's modernization plan, the Company's financial condition had deteriorated to the point where, absent an immediate infusion of significant liquidity or other emergency relief, it would no longer be able to continue as a going concern. After this Court held that it lacked jurisdiction to bar the Union's threatened strike, and with substantially all of Yellow's remaining customers moving their business to Yellow's competitors as a result of the threatened strike, Yellow was forced to shutter its business after 99 years of continuous operations. On August 6, 2023, Yellow filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware, where the orderly liquidation of its assets is now underway.

As alleged in the First Amended Verified Complaint, Yellow's financial ruin was caused by the Union's refusal, for nine months, commencing in October 2022, to negotiate the

implementation of Yellow's vital strategic initiative – One Yellow – to modernize its business and optimize its network. As Union leadership was well aware, the timely implementation of One Yellow was critical to the Company's survival and, without its crucial reforms, Yellow would not survive the summer, resulting in the loss of 30,000 jobs, including 22,000 union jobs. The Union nonetheless blocked Yellow's modernization efforts because IBT General President Sean O'Brien apparently was prepared to sacrifice 22,000 Teamsters jobs and a hundred-year-old trucking company so that he could project an image of "strength" in the Union's upcoming negotiations with UPS and other companies. When Yellow did not pay certain health, welfare, and pension payments (the "Contributions") in July, the Union, rather than agreeing to temporarily delay those obligations and return to the bargaining table, issued a 72-hour strike notice, which caused most of Yellow's customers to flee and its business, for all intents and purposes, to evaporate.

By late July, unable to sustain its operations, and with its daily shipment count near zero, Yellow was forced to wind down its operations after 99 years in business and to lay off substantially all of its 30,000 employees. On August 6, 2023, Yellow Corporation and 23 of its subsidiaries filed petitions for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), in a case captioned *In re Yellow Corp.*, No. 23-11069 (Bankr. D. Del.) (the "Bankruptcy Case"). The purpose of Yellow's Chapter 11 filing is not to determine whether Yellow, or any portion of it, can reemerge from bankruptcy as a going concern, but is instead intended to allow for the orderly liquidation of Yellow's assets, which are estimated to be worth approximately $2.15 billion (against liabilities of approximately $2.59 billion) and which are comprised mainly of significant holdings of real property and rolling stock.

Under Section 1412, transfer of an action is permitted on a showing that transfer is *either* in the interest of justice *or* for the convenience of the parties. Here transfer of the case to the

Delaware Bankruptcy Court furthers both goals. This litigation is an asset of the bankrupt estates, and the breach of contract claim seeks $1.5 billion from the Union for the destruction of Yellow's enterprise value, which is nearly 70% of the total estimated value of all of Yellow's other assets. With Yellow out of business and the Bankruptcy Case to liquidate its assets in Delaware, Yellow's connection to Kansas has significantly diminished. Yellow no longer has any freight operations in Kansas (or anywhere else) and Yellow's administrative functions, which had in significant part been run out of Kansas prior to the bankruptcy, have been substantially wound down. Moreover, defendant IBT is headquartered in Washington, D.C., where key IBT witnesses and TNFINC members are located, and defendant IBT has been appointed to the Committee of Unsecured Creditors in the Bankruptcy Case. While three defendant Local Unions are based in Kansas, they are represented by counsel who are employed by IBT and located in Washington, D.C., which also makes Delaware convenient for the Local Unions' primary counsel.

## BACKGROUND

### I. The Parties

Prior to its bankruptcy, Yellow was a leading trucking and logistics company, the third largest less-than-truckload ("LTL") carrier in North America, and the largest unionized LTL carrier. (Dkt. 21 ¶¶ 2, 58.) Plaintiffs Yellow Corp., YRC Freight, USF Holland LLC, and New Penn Motor Express LLC are Delaware entities. (*Id.* ¶¶ 41-44.) Plaintiff USF Reddaway Inc. is an Oregon corporation. (*Id.* ¶ 45.)

Defendant IBT is an international union headquartered in Washington, D.C. (Ex. 1 at 1.) TNFINC is IBT's freight industry negotiating committee. (Dkt. 21 ¶ 47.) The three local union defendants are based in Kansas. (*Id.* ¶¶ 49-51.) The Local Unions are represented by primary counsel employed by IBT in Washington, D.C. (Ex. 2 at 2.)

## II.     The District of Kansas Litigation

On June 27, 2023, Yellow commenced this action alleging that the defendants breached the NMFA causing Yellow more than $137 million in damages and threatening its enterprise value by unjustifiably blocking, for over nine months, Yellow's One Yellow network optimization and restructuring plan. As further alleged, the One Yellow modernization efforts were essential to the Company's survival and, without them, Yellow was unlikely to survive, resulting in the loss of 30,000 jobs, including 22,000 union jobs.

As more specifically alleged in its First Amended Verified Complaint, for more than nine months, at the behest and direction of IBT General President O'Brien and in breach of the NMFA, the Union intentionally and repeatedly stonewalled Yellow's implementation of Phase 2 of its One Yellow enterprise initiative. (Dkt. 21 ¶¶ 107-93.) Even though it meant sacrificing 22,000 of his own Members' jobs, O'Brien decided that Yellow was better off dead than alive because any give-and-take with Yellow would, in his view, weaken his and the Union's image, and O'Brien wanted the Union to appear strong for maximum leverage in ongoing contract negotiations with UPS, and to position the Union to convince Amazon workers to join the Union. (*Id.* ¶¶ 6-7, 29, 147, 186-93.) Thus, at the same time the Union refused to work with Yellow, in breach of the NMFA, and prevented Yellow from implementing Phase 2 of One Yellow, O'Brien and the Union engaged in a negative media campaign intended to weaken Yellow and scare off its customers. (*Id.* ¶¶ 186-93; Ex. 3 ¶ 7.)

As the Union well knew, implementation of Phase 2 was critical to Yellow's survival and success. (Dkt. 21 ¶ 20.) Every month the Union breached its contractual obligations, Yellow lost the savings and increased revenues that One Yellow's implementation would have provided, a hit of approximately $24,000,000 in adjusted EBITDA every month. (*Id.* ¶ 180; Ex. 3 ¶ 9.) Each day the Union blocked the successful implementation of One Yellow, Yellow got closer to running out

4

of cash. (Ex. 3 ¶ 9.) Although the Union was well aware of the precarious financial position it was forcing Yellow into, the Union nevertheless stubbornly refused to negotiate the necessary changes of operations with Yellow. (Dkt. 21 ¶¶ 6-7, 26-30.)

Pushed to the brink by the Union's intransigence, Yellow was forced to take steps to save itself. (*Id.* ¶ 197.) Among other things, Yellow reached out to the Biden Administration and Senator Bernie Sanders for assistance in bringing the Union back to the table. (*Id.* ¶¶ 189-91.) When those efforts bore no fruit, Yellow filed this lawsuit on June 27, 2023, seeking $137 million in damages for the Union's obstruction of Phase 2, as well as the loss of Yellow's enterprise value, which it estimates at approximately $1.5 billion, and punitive damages. (Dkt. 1.) Yellow brought suit in Kansas, where it maintained headquarters until February 2022, and where, until it shut down operations in early August 2023, it had continued to maintain a significant operational and administrative presence after moving its headquarters to Tennessee. (Dkt. 21 ¶¶ 40-45.)

Even after Yellow commenced this lawsuit, the Union continued to impede Phase 2 of One Yellow. (Ex. 3 ¶ 12.) Yellow's Union-caused liquidity crisis grew more acute by the day. (*Id.* ¶ 11.) But, hopeful that IBT might finally come to the negotiating table with the benefit of more time, Yellow undertook numerous liquidity-preservation measures necessary to extend its runway, including deferring certain contractual contributions in the amount of approximately $22.5 million to health, welfare, and pension funds. (*Id.*)

On July 17, 2023, after Yellow failed to pay the Contributions, and even though its inability to pay was a direct result of the Union's breach of the NMFA, the Union immediately issued a 72-hour strike notice. (Dkt. 25 at 7.) On July 19, 2023, Yellow moved for injunctive relief to halt the strike (Dkt. 22), but its motion was denied (Dkt. 37). On July 20, 2023, defendants moved to dismiss this litigation. (Dkt. 29-32.)

5

At the same time, news of the impending strike spread and Yellow's customers left for its competitors. (Ex. 3 ¶ 13.) Even Yellow's most loyal customers, facing the uncertainty of the threatened strike, dropped Yellow as a carrier. (*Id.*) Over just four days, Yellow's business evaporated: on the Monday the strike was announced, Yellow's individual shipments totaled approximately 40,000; by Tuesday, Yellow's shipments declined to approximately 30,000; by Wednesday, to approximately 20,000; by Thursday, to approximately 10,000; and by Friday, to near zero. (*Id.*)

Six days after the strike notice was issued, IBT finally came to the negotiating table, but by then it was too late for Yellow. (*Id.* ¶ 14.) Yellow and its advisors determined that Yellow was unlikely to obtain financing for the proposal IBT made, let alone for Yellow to continue operating as a going concern. (*Id.* ¶ 16.) Thus, Yellow took steps towards implementing a full-scale winddown of its business operations. (*Id.* ¶ 17.)

Yellow discontinued accepting additional shipments during the week of July 24, 2023. (*Id.*) On July 28, 2023, Yellow terminated approximately 3,500 employees who executed release agreements in consideration for severance payments from the Company. (*Id.*) On July 30, 2023, the Company sent notice to its unions that it was laying off approximately 22,000 union employees. (*Id.*) On July 31, 2023, the Company sent WARN notices to affected employees. (*Id.*)

By Order of this Court dated August 8, 2023, Yellow's deadline to respond to defendants' motions to dismiss was extended to August 24, 2023. (Dkt. 45.)

### III.     The Chapter 11 Case

On August 6, 2023, Yellow Corporation and 23 of its subsidiaries (together, the "Debtors"), including each of the other plaintiffs, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. (Ex. 4.) The Chapter 11 cases were consolidated for procedural purposes and are jointly administered by the

Delaware Bankruptcy Court under Case No. 23-11069, with Judge Craig T. Goldblatt presiding. (*See* Ex. 5.)

The Debtors are maintaining, administering, and preserving certain limited operations and maximizing the value of their estates through an orderly winddown process of their businesses and comprehensive sale effort of their assets. (Ex. 6.) This litigation is an asset of the bankruptcy estates.

In connection with its First Day Motions, the Debtors submitted the declaration of Board Chairman Matthew Doheny, which summarized the facts underlying the litigation, the subsequent strike notice, Yellow's inability to enjoin the strike, the subsequent loss of customers, and the decision to wind down operations. (*See generally* Ex. 3.) On August 9, 2023, Judge Goldblatt held a hearing on the First Day Motions. (Ex. 7.)

On August 16, 2023, defendant IBT was appointed to the Committee of Unsecured Creditors. (Ex. 8.)

## ARGUMENT

Under 28 U.S.C. § 1412, "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Section 1412 operates in the disjunctive, meaning that venue may be transferred upon the movant showing by a preponderance of the evidence that the case should be transferred *either* in the interest of justice *or* for the convenience of the parties. *See Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 208 (Bankr. W.D. Tex. 2015). Below, Yellow shows both, and each is an independent reason for transferring this case to the U.S. District Court for the District of Delaware for automatic transferal pursuant to the local standing order of reference. (*See* D. Del. Am. Standing Order of Reference Re: Title 11 (Feb. 29, 2012).)

7

**I.      This Case Is a Case or Proceeding Under Title 11**

Section 1412 applies to the transfer of a "case or proceeding under title 11." 28 U.S.C. § 1412. The phrase "under Title 11" not only includes matters "arising under" or "arising in" cases under Title 11, but also matters "related to" a Title 11 case. *Harwell v. Hutton (In re Harwell)*, 381 B.R. 885, 892 (Bankr. D. Colo. 2008); *see also City of Liberal v. Trailmobile Corp.*, 316 B.R. 358, 362 n.2 (D. Kan. 2004) (noting that line of decisions applying Section 1412, rather than 28 U.S.C. § 1404, to transfer of a "related to" proceeding "is the more persuasive"); *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P. (In re 1111 Prospect Partners)*, 204 B.R. 222 (Bankr. D. Kan. 1996) (using Section 1412 to assess propriety of transfer of pre-petition case to home bankruptcy court); *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1212 (3d Cir. 1991) (where civil proceeding in a district court becomes "related to" subsequently filed bankruptcy case, "proper method for transferring the related proceeding to the bankruptcy court" is to seek change of venue in non-bankruptcy forum under Section 1412).

A "related to" proceeding is a civil proceeding that could have been brought in a district court in the absence of a bankruptcy petition and whose outcome "'could conceivably have any effect on the estate being administered in bankruptcy.' The proceeding is 'related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate.'" *Larkin v. Bank of Am., N.A.*, Civ. Act. No. 15-1151-MLB, 2015 WL 5252637, at *2 (D. Kan. Sept. 9, 2015) (citations omitted).

This proceeding could have been brought in a district court in the absence of a bankruptcy petition, as evidenced by the fact that it was brought in this district court before the bankruptcy petitions were filed. Moreover, this proceeding "could conceivably have any effect on the estate being administered in bankruptcy," because it is an asset of the bankruptcy estates of the Plaintiffs,

8

and any recovery obtained through this litigation will be included in the Plaintiffs' bankruptcy estates and administered in bankruptcy by Judge Goldblatt. *See Breen v. Guttman (In re Breen)*, No. 02-58017-RG, 2007 WL 1385520, at *3-4 (D. Md. May 8, 2007) ("estate generally encompasses everything that the debtor owns upon filing a petition, including causes of action belonging to the debtor . . . .").

## II. This Case Should Be Transferred to the Bankruptcy Court in the Interest of Justice

The first justification for transfer under Section 1412, "in the interest of justice," is a flexible standard that allows a court to consider "the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." *Think3*, 529 B.R. at 209. Six factors that courts consider when assessing whether transfer is in the interest of justice are: (i) efficiency and the economics of estate administration; (ii) a presumption in favor of the "home [bankruptcy] court"; (iii) judicial economy and efficiency; (iv) the ability to receive a fair trial; (v) the state's interest in having local controversies decided within the state; and (vi) plaintiff's original choice of forum. *Id.*

***Efficiency and the economics of estate administration.*** Efficiency and the economics of estate administration "is referred to by some courts as the most important factor" in determining the interest of justice under Section 1412. *Id.*; *accord Bennett v. FCA US LLC*, No. 2:17-CV-00665-RJS, 2018 WL 748505, at *2 (D. Utah Feb. 7, 2018) (granting transfer of venue). Transfer to the home bankruptcy court is favored when the outcome of the litigation would affect the availability of funds for the bankruptcy estates. *See, e.g.*, *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*, No. C-06-04693 JCS, 2008 WL 425638, at *2 (N.D. Cal. Feb. 14, 2008) (resolution of plaintiff's claims would have significant impact on estate because, if successful, plaintiff's claims likely would deprive debtor of ability to pay its creditors).

9

This litigation is property of the bankruptcy estates. If Plaintiffs recover – and they are seeking damages of at least $137 million for the lost cost savings and revenue increases from Phase 2 during the months the Union obstructed Phase 2, more than $1.5 billion for the enterprise value of Yellow that the Union destroyed, and punitive damages (*see* Dkt. 21 ¶¶ 204-06, 214-16) – their recovery will become part of the bankruptcy estates that Judge Goldblatt will administer, and in which unsecured creditors have an interest, including defendant IBT, which sits on the Committee of Unsecured Creditors. In its bankruptcy petition, Yellow's assets were estimated to be worth approximately $2.15 billion (against liabilities of approximately $2.59 billion) and are comprised mainly of significant holdings of real property and rolling stock. (Ex. 4 at 10.) If the breach of contract claim that is the subject of this lawsuit is proved and all resultant damages credited, that recovery alone would account for more than 70% of the total estimated value of all of Yellow's other assets. Because the outcome of the litigation affects the bankruptcy estates to a significant degree, transfer is favored. Thus, this most important factor supports transfer to the Bankruptcy Court.

***Presumption in favor of the home bankruptcy court.*** Courts within the Tenth Circuit apply "a presumption that 'the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction.'" *Bennett*, 2018 WL 748505, at *2. The presumption is "based on the rationale that it is preferable for the court that has jurisdiction over the bankruptcy case to adjudicate adversary proceedings relating to the bankruptcy case." *Think3*, 529 B.R. at 209. This is so because the Bankruptcy Code's objectives include "centralization of disputes concerning a debtor's legal obligations, and protection of debtors and creditors from piecemeal litigation." *See Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1131 (9th Cir. 2012). This factor also supports transfer to the Bankruptcy Court.

10

*Judicial economy and efficiency.* This factor considers the home bankruptcy court's familiarity with the issues and law, court caseloads, and the availability of the courts to resolve disputes and move a case toward trial. *See Think3*, 529 B.R. at 209. Here, the Bankruptcy Court is already familiar with the issues in this litigation because the facts underlying the litigation are the same facts that precipitated Yellow's bankruptcy filings. In connection with its First Day Motions, the Debtors submitted the declaration of Board Chairman Matthew Doheny, which chronicled the underlying facts and put the litigation, the subsequent strike notice, the inability to enjoin the strike, and the subsequent loss of customers into context. (Ex. 3.) Judge Goldblatt held a hearing on the First Day Motions. (Ex. 7.) By contrast, this Court has yet to hear live testimony from any witness about anything relating to this litigation, and the documentary evidence this Court has received covers a narrower time range because it all predates Yellow's winddown and bankruptcy filings. The home bankruptcy court now has more familiarity with the issues, which also supports transfer. *See City of Liberal*, 316 B.R. at 361 (judicial economy promoted if court already familiar with many of the issues in case).

*Ability to receive a fair trial.* This factor considers whether the transferor court has evidenced a predisposition to rule in favor of one party and whether both parties can get an impartial jury. *Think3*, 529 B.R. at 210. This factor is neutral, as both Yellow and the Union can get a fair trial in Kansas or in Delaware.

*The state's interest in resolving local controversies within the state.* In some cases, the state has an interest in having "local courts preside over disputes that involve their laws or disputes that occurred in their jurisdiction." *Id*. This factor is inapplicable here, as the dispute does not involve local laws and is not centered in Kansas; rather, this case is brought under federal law, specifically Section 301 of the Labor Management Relations Act (*see* Dkt. 21 ¶ 38), and the

11

dispute was not centered in Kansas, but affected Yellow's operations in the Northeast, Midwest, and Southeast regions of the country. (*See id.* ¶ 76.)

***Plaintiff's original choice of forum.*** Generally, the defendant moves to transfer, and plaintiff's original choice of forum is given weight. Here, however, Plaintiffs are Debtors and are moving to transfer. Plaintiffs' original choice of forum, Kansas, made sense when Yellow had active operations in Kansas. But since the filing of the lawsuit, Yellow has filed for bankruptcy in Delaware and has ceased its operations, including in Kansas. While it continues to run some administrative functions with a skeleton crew of employees resident in Kansas, those administrative activities have also been substantially wound down since its commencement of Chapter 11 proceedings. This change in circumstances negates the presumption in favor of the original choice of forum and reaffirms the presumption in favor of the Bankruptcy Court. *See Quick v. Viziqor Sols., Inc.*, No. 4:06CV637SNL, 2007 WL 494924, at *4 (E.D. Mo. Feb. 12, 2007) (granting Section 1412 transfer of "related to" action to Delaware, home court for bankruptcy; even though plaintiff chose Missouri as the forum, fact that plaintiff then filed claims with Delaware bankruptcy court reaffirmed presumption in favor of home bankruptcy court); *Myers v. Doe*, Civ. Act. No. 9:04-CV-0270 (FJS/DEP), 2006 WL 3392692, at *3 (N.D.N.Y. Nov. 22, 2006) (transfer by plaintiff is justified when transferee district is also appropriate forum, "a situation which did not obtain at the times of commencement").

In sum, six factors are relevant when determining whether, under Section 1412, a transfer furthers the interest of justice. As shown above, five factors, including the most important of the factors, efficiency of estate administration, favor transfer; one factor is neutral; and none of the factors resolves against transfer. Thus, Yellow has shown that the interest of justice is furthered

12

by transfer of this case to the Bankruptcy Court, and on that basis alone the case should be transferred under Section 1412.

### III. This Case Should Be Transferred to the Bankruptcy Court for the Convenience of the Parties and Witnesses

In addition to showing above that transfer to the Bankruptcy Court under Section 1412 should be granted in the interest of justice, transfer is warranted for a second independent reason, convenience of the parties and witnesses. *See Think3*, 529 B.R. at 210-11 (factors that courts consider in assessing convenience of parties and witnesses under Section 1412 include location and proximity of parties; access to necessary proof; convenience to witnesses, including their location and proximity; location of assets, including books and records; ability to subpoena unwilling witnesses; and expenses for obtaining witnesses).

When Yellow commenced this action in Kansas, it maintained a significant operational presence in Kansas, and it supported administrative functions for its operating subsidiaries from its Kansas offices. But that has all changed in the last weeks. Yellow has ceased its freight operations and is winding down its administrative functions. Kansas is no longer a significant operational center for Yellow. Rather, it is focused on its bankruptcy proceedings in Delaware.

Yellow expects its key witnesses in this litigation will include CEO Darren Hawkins, President Darrel Harris, former Board Chairman and current Chief Restructuring Officer Matthew Doheney, Chief Financial Officer Dan Olivier, and former Senior Vice President of Trucker Relations Brian Reifsnyder. None of these witnesses reside in Kansas, and it will be equally convenient for each to appear in Delaware as it would be to appear in Kansas. *See City of Liberal*, 316 B.R. at 361 (convenience furthered when proceedings are in one location).

Moreover, Delaware is a more convenient forum for defendant IBT, which is headquartered in Washington, D.C., and members of TNFINC. *See Think3*, 529 B.R. at 211

(physical location and proximity of parties are relevant to determining convenience of parties). Key IBT witnesses for this litigation, General President O'Brien and National Freight Director John Murphy, are located in Washington, D.C. Defendant IBT is already involved in the Bankruptcy Case, as it sits on the Committee of Unsecured Creditors.

Although the three Local Unions are based in Kansas, and at first blush Delaware seems less convenient for them, any inconvenience is mitigated by the fact that they are represented by IBT counsel from Washington, D.C. Indeed, during the July 21, 2023 Hearing on Yellow's Motion for Temporary Restraining Order, IBT's counsel situated in Washington, D.C. argued on behalf of all defendants, including the Local Unions. (Ex. 2 at 17:18-18:23.) Thus, for most of the litigation proceedings, which involve counsel and not parties, Delaware will be more convenient for the Local Unions.

In short, in light of Yellow's materially changed circumstances, Delaware is now, on balance, a more convenient forum than Kansas, and transfer to the Bankruptcy Court is warranted under the convenience prong of Section 1412.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to transfer, and transfer the case directly to the United States Bankruptcy Court for the District of Delaware.

Dated: August 18, 2023

Respectfully submitted,

*/s/ Daniel P. Johnson*
Trina R. Ricketts   KS #18697
Daniel P. Johnson KS #27449
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
700 W. 47th Street, Suite 500
Kansas City, MO  64112
Phone:  816.471.1301
Facsimile:  816.471.1303
Email:  trina.ricketts@ogletree.com
Email:  daniel.johnson@ogletree.com

And

Marc E. Kasowitz (*Admitted Pro Hac Vice*)
Ronald R. Rossi (*Admitted Pro Hac Vice*)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York  10019
Telephone:  212.506.1700
Facsimile:  212.506.1800
Email:  mkasowitz@kasowitz.com
Email:  rrossi@kasowitz.com

And

Maria Gorecki (*Admitted Pro Hac Vice*)
**KASOWITZ BENSON TORRES LLP**
1400 16th Street, Suite 400
Denver, Colorado  80202
Phone:  720.932.8303
Facsimile:  720.932.8300
Email:  mgorecki@kasowitz.com

**ATTORNEYS FOR PLAINTIFFS YELLOW CORPORATION, YRC INC. (D/B/A YRC FREIGHT), USF HOLLAND LLC, NEW PENN MOTOR EXPRESS LLC, AND USF REDDAWAY INC.**

## CERTIFICATE OF SERVICE

   I hereby certify that on this 18th day of August, 2023, I caused the above and foregoing document to be electronically filed using the CM/ECF system, which will provide electronic notification to counsel of record for Defendants:

| | |
|---|---|
| Michael E. Amash<br>Nathan A. Kakazu<br>**BLAKE & UHLIG, PA**<br>6803 W. 64th Street, Suite 300<br>Overland Park, KS 66202<br>Phone:  913.321.8884<br>Facsimile:  913.321.2396<br>Email:  mea@blake-uhlig.com<br>Email:  nak@blake-uhlig.com | Edward M. Gleason, Jr.<br>Richard W. Gibson<br>**INTERNATIONAL BROTHERHOOD OF TEAMSTERS**<br>25 Louisiana Avenue, NW<br>Washington, DC 20001<br>Phone:  202.624.6945<br>Facsimile:  202.624.6884<br>Email:  egleason@teamster.org<br>Email:  rgibson@teamster.org |

**ATTORNEYS FOR ALL DEFENDANTS**

*/s/  Daniel P. Johnson*
Daniel P. Johnson
**ATTORNEY FOR PLAINTIFFS**