IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

YELLOW CORPORATION, et al.,

      Plaintiffs,

      v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, et al.,

      Defendants.

Case No. 23-1131-JAR-ADM

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs Yellow Corporation, YRC, Inc. d/b/a YRC Freight, USF Holland LLC, New Penn Motor Express LLC, and USF Reddaway, Inc.'s Motion to Transfer (Doc. 47). Plaintiffs' request for oral argument is denied because the Court finds that it would not materially assist it in deciding this matter. Therefore, the motion is fully briefed, and the Court is prepared to rule. As described more fully below, Plaintiffs' motion to transfer is denied.

## I.     Background

Plaintiffs Yellow Corporation, YRC Inc. d/b/a YRC Freight, USF Holland LLC, New Penn Motor Express LLC, and USF Reddaway Inc. (collectively, "Plaintiffs" or "Yellow") filed this action on June 27, 2023, alleging breach of a collective bargaining agreement, the National Master Freight Agreement ("NMFA"), between Yellow and Defendants International Brotherhood of Teamsters ("IBT"), Teamsters National Freight Industry Negotiating Committee ("TNFINC"), Teamsters Local No. 696 ("Local 696"), Teamsters Local No. 795 ("Local 795"), and Teamsters Local No. 41 ("Local 41"; collectively with Local 696 and Local 795, the "Local Unions").

Prior to its bankruptcy, Yellow was a leading trucking and logistics company, the third largest less-than-truckload ("LTL") carrier in North America, and the largest unionized LTL carrier. All Plaintiffs except Reddaway, Inc. are incorporated in Delaware; Reddaway is incorporated in Oregon. IBT is an international union headquartered in Washington, D.C. TNFINC is IBT's freight industry negotiating committee.

The Local Unions are signatories to the NMFA. Local 696's primary office is in Topeka, Kansas. Its jurisdiction includes portions of Kansas in and around the Topeka area. It has no bargaining units in Delaware, and no officers reside there. Local 795's primary office is in Wichita, Kansas. Its jurisdiction includes portions of Kansas in and around the Wichita metropolitan area. It has no bargaining units in Delaware, and no officers reside there. Local 41's primary office is in Kansas City, Missouri. Its jurisdiction includes portions of Missouri and Kansas in and around the Kansas City metropolitan area. Local 41 has no members or officers in Delaware. Although the IBT's counsel has entered an appearance for all Defendants, the Local Unions' primary counsel is Blake and Uhlig, P.A., which is based in Overland Park, Kansas.

On July 19, 2023, Yellow filed a First Amended Complaint. Count I alleges breach of the NMFA against TNFINC and the Local Unions by:

> (i) canceling the change of operations hearing set for April 5-7, 2023, (ii) refusing to reschedule a change of operations hearing, and (iii) requiring Yellow to agree to wage increases as a condition for approving changes of operations that should proceed in accordance with the NMFA without regard to any wage increases.[1]

---

[1] Doc. 21 ¶ 203.

Count II alleges breach of the NMFA against IBT because it "engaged in affirmative conduct to instigate, support, ratify, and encourage the other defendants to breach their obligations under the NMFA, and put the power of the IBT behind the other defendants' conduct."[2]

Also on July 19, 2023, Yellow sought a temporary restraining order and preliminary injunction: (1) directing IBT and TNFINC to immediately resume the mandatory grievance procedures of the NMFA for Yellow's One Yellow Phase 2 change of operations, and (2) enjoining the Union from engaging in a strike, work stoppage, slow down, or interruption of work until the mandatory grievance procedures had been given full play. The Court promptly set the motion for hearing on July 21. After hearing extensive argument from the parties, the Court orally denied the motion for injunctive relief, finding it lacked authority to bar Defendants' threatened strike.

On August 6, 2023, Yellow Corporation and 23 of its subsidiaries ("Debtors"), including each of the other Plaintiffs in this case, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. The Chapter 11 cases were consolidated for procedural purposes and are jointly administered by the Delaware Bankruptcy Court under Case No. 23-11069, with Bankruptcy Judge Craig T. Goldblatt presiding. The Debtors are maintaining, administering, and preserving certain limited operations and maximizing the value of their estates through an orderly wind-down process of their businesses and comprehensive sale effort of their assets. This litigation is an asset of the bankruptcy estates.

---

[2] *Id.* ¶ 213.

In connection with its First Day Motions in the bankruptcy case,[3] the Debtors submitted the declaration of Board Chairman Matthew Doheny, which summarized the facts underlying this litigation, the subsequent strike notice, Yellow's inability to enjoin the strike, the subsequent loss of customers, and the decision to wind down operations.  On August 9, 2023, Judge Goldblatt held a First Day Motions hearing.  The United States Trustee placed IBT on the Unsecured Creditors Committee on August 16, 2023.

On July 20, the day before the preliminary injunction hearing, Defendants IBT and TNFINC filed motions to dismiss.[4]  Plaintiffs' responses were due on August 24, 2023.[5]   On September 11, 2023, the Court granted Plaintiffs' motion to stay briefing on the motions to dismiss until after the motion to transfer is decided.[6]

## II.    Discussion

Yellow moves to transfer this matter to the United States District Court for the District of Delaware, for reference to United States Bankruptcy Court for the District of Delaware, under 28 U.S.C. § 1412.  Under § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  Yellow argues that transfer is warranted both in the interest of justice and for the convenience of the parties.  Defendants respond that § 1412 does not apply because this case is not "a case or proceeding under title 11," and therefore the Court instead must look to the transfer standard in 28 U.S.C. § 1404(a).  Plaintiffs maintain that § 1412 applies to this case

---

[3] First Day Motions are when the Chapter 11 Debtor appears before the bankruptcy court to file expedited requests to continue operating.  *In re Engen*, 561 B.R. 523 (Bankr. D. Kan. 2016) (citation omitted) (discussing First Day Motions in Chapter 11 cases).

[4] Docs. 29, 31.

[5] *See* Doc. 45.

[6] Doc. 55.

because "a case or proceeding under title 11" includes those that are "related to" a Chapter 11 proceeding, such as this one.

Under § 1404(a), a civil action can only be transferred "to any other district or division where it might have been brought or to any district or division to which all parties have consented." Because all parties have not consented to transfer, and this case could not have been brought in the District of Delaware, Defendants argue that the motion for transfer must be denied. Defendants argue in the alternative that the relevant factors this Court must consider on a motion to transfer under § 1412 do not support transfer.

The Court first considers which transfer statute applies to Plaintiffs' motion. As described below, the Court agrees with Defendants that the motion is governed by § 1404(a). Under that statute, the motion to transfer must be denied because this case could not have been brought in the District of Delaware. Additionally, even if the Court decided that § 1412 applied, it would deny the motion to transfer after weighing the applicable factors.

### A.      Whether 28 U.S.C. §§ 1404(a) or 1412 Applies

The parties dispute whether § 1412 governs a motion to transfer where, like here, the civil action is not itself filed "under title 11," but instead, is "related to" a proceeding under title 11 of the Bankruptcy Code.[7] The Tenth Circuit has not spoken on this issue, and there is a split of district-court authority. Some district court decisions, including one from the District of Kansas, conclude that the language "under title 11" in § 1412 includes cases "related to" the bankruptcy proceeding.[8] Another line of cases strictly construes § 1412, and finds that "under

---

[7] In the Tenth Circuit, "a civil proceeding is related . . . [if] the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

[8] *See, e.g.*, *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 676–80 (S.D. W. Va. 2005) (collecting cases and considering legislative history); *City of Liberal v. Trailmobile Corp.*, 316 B.R. 358, 361–63 & n.2 (D. Kan. 2004) (collecting cases, declining to resolve because under either statute the court would grant transfer, and noting that

title 11" means "the main bankruptcy case itself, . . . [or] if it asserts causes of action that are created by the Bankruptcy Code itself."[9]  Yellow wholly fails to acknowledge this second line of cases in its opening brief.  Only in the reply brief does Yellow address what it describes as the "minority view."[10]

Although there is no binding caselaw on this issue from the Tenth Circuit, the Court must begin with the statute's text.[11]  "If the statute's text is unambiguous, then its plain meaning controls, and our inquiry ends.  The plain meaning of a statute 'is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'"[12]

The Court has reviewed the cases on each side of the issue and is more persuaded by the decisions that strictly apply § 1412.  As Bankruptcy Judge Michael E. Wiles convincingly explained in his 2018 opinion on this issue:

> The reference to title 11 is, of course, a reference to the Bankruptcy Code. . . .  [T]he wording of section 1412 differs from many other sections of title 28 that relate to bankruptcy cases and to bankruptcy-related matters.  For example, section 1334 provides

---

"[i]f the court were to resolve the matter, it would find that § 1412 controls" and follow the line of cases holding that transfer of related-to actions are governed by § 1412); *Creekridge Cap., LLC v. La. Hosp. Ctr., LLC*, 410 B.R. 623, 627–29 (D. Minn. 2009) (adopting analysis in *Dunlap*); *BRH-Garver Constr., LLC v. BankFinancial, N.A.*, No. 22-CV-1449, 2023 WL 5334610, at *5 (N.D. Ill. Aug. 18, 2023) (focusing on categories of "proceedings" in bankruptcy cases and finding that it can include those related to a case under title 11); *In re Harwell*, 381 B.R. 885, 891 n.4 (Bankr. D. Colo. 2008) (noting split of authority, concluding that § 1412 applies to "related to" proceedings, but finding that under either statute, transfer would be appropriate).

[9] *Multibank, Inc. v. Access Global Cap. LLC*, 594 B.R. 618, 622 (S.D.N.Y. 2018); *see also, e.g.*, *Fitzgibbon v. Radack*, 597 B.R. 836, 840–41 (E.D. Va. 2019) (following *Multibank*); *EuroChem N. Am. Corp. v. Ganske*, No. 18-CV-16-SLC, 2020 WL 7447136, at *3–4 (W.D. Wis. Dec. 18, 2020) (same); *Shaver v. Orthodontic Ctrs. of Colo., Inc.*, No. 06-cv-00151, 2007 WL 38665, at *1–2 (D. Colo. Jan. 4, 2007) (holding that § 1412 only applies to "core" bankruptcy proceedings); *Angell v. Shell Oil Co.*, No. CV 03-0318, 2004 WL 7337807, at *2 (D.N.M. Aug. 20, 2004) ("[M]otions to transfer actions 'related to' title 11 cases should be governed by Section 1404 . . . ."); *Ni Fuel Co. v. Jackson*, 257 B.R. 600, 608 (N.D. Okla. 2000) (interpreting the language "under" to mean "the actual bankruptcy proceeding").

[10] Doc. 56 at 1.

[11] *United States v. Broadway*, 1 F.4th 1206, 1211 (10th Cir. 2021).

[12] *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

that the district courts have jurisdiction over "civil proceedings arising under title 11 or arising in or related to a case under title 11." Section 157(a) provides that the district court may refer civil proceedings "arising under title 11, or arising in or related to a case under title 11" to the bankruptcy judges pursuant to section 157(a) of title 28. Section 1409 of title 28 defines the proper venue for civil proceedings "arising under title 11 or arising in or related to a case under title 11."

There is a substantial body of case law under these provisions of title 28 that deals with the separate questions of whether a matter arises "under" title 11, or whether it "arises in" a case under title 11, or whether it is "related to" a case under title 11. However, section 1412 does not use all three of those phrases. Instead, section 1412 only refers to transfers of cases or proceedings "under" title 11. There is no reference in section 1412 to cases or proceedings "arising in" or "related to" cases under the Bankruptcy Code.[13]

This Court agrees with Judge Wiles' interpretation of § 1412. There is no language in the statute indicating it applies to cases or proceedings "related to" a case or proceeding under title 11. In contrast, other bankruptcy provisions do include references to cases "related to" proceedings under the Bankruptcy Code. Therefore, the statute's plain meaning, as informed by referencing the language itself, and its context, convinces this Court that § 1412 does not apply to cases that are merely "related to" a case or proceeding under title 11 of the Bankruptcy Code.

Plaintiffs argue that the word "proceedings" in § 1412 should be interpreted with reference to § 1409, the venue statute for cases "arising under title 11 or arising in or related to a case under title 11."[14] Indeed, at least one district court has determined that because §§ 1409 and 1412 were enacted at the same time, they should be interpreted consistently:

Because section 1409(a) uses the term "proceeding" to include an action "related to a case under title 11[,]" it lends strong credence

---

[13] *Multibank, Inc.*, 594 B.R. at 622 (first quoting § 1412; then quoting 28 U.S.C. § 1334(b); then quoting 28 U.S.C. § 157(a); and then quoting 28 U.S.C. § 1409) (citing *Onewoo Corp. v. Hampshire Brands, Inc*., 566 B.R. 136, 139–40 (Bankr. S.D.N.Y. 2017)).

[14] 28 U.S.C. § 1409.

> to the notion that the word "proceeding[,]" as used in section 1412, should be accorded the same breadth.  If not, one is left to speculate what the term "proceeding" actually means in section 1412.[15]

This Court respectfully disagrees.  As Judge Wiles noted, "[t]he word 'proceeding' does not appear by itself in section 1412.  Instead, the statute uses the phrase 'a case or proceeding *under title 11*.'"[16]  Reading into the statute the words "arising in or related to," would render meaningless the words "under title 11."[17]  Other provisions, including § 1409, explicitly modify the term "proceeding" with "related to" language, but such modifying language does not appear in § 1412.  The fact that the statutes were enacted at the same time supports the proposition that Congress intentionally included this modifying language in § 1409 and not in § 1412.  The Court declines to read words into the statute that are not there, and therefore declines to apply § 1412 to a civil action that is not the bankruptcy case itself or that does not include causes of action that are created by the Bankruptcy Code.

The Court also disagrees with Plaintiffs' characterization of the state of authority in this District.  In the reply brief, they assert that "[t]he three decisions in this District that have addressed the issue have adopted the majority view that Section 1412 also covers the transfer of core 'arising-in' and non-core 'related-to' cases."[18]  First, it is not at all clear that this is a "majority view."  As Judge Marten noted in 2004, "courts have reached different conclusions as to which interpretation constitutes the majority view."[19]

---

[15] *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 676–80 (S.D. W. Va. 2005) (alterations in original); *see also BRH-Garver Constr., LLC v. BankFinancial, N.A.*, No. 22-CV-1449, 2023 WL 5334610, at *5 (N.D. Ill. Aug. 18, 2023) (quoting *Indep. Stationers, Inc. v. Vaughn*, No. IP 99-0127 C M/S, 2000 WL 1449854, at *3 (S.D. Ind. Jan. 3, 2000)) (finding that the word "proceedings" in § 1412 includes those "related to" a case under title 11).

[16] *Multibank, Inc.*, 594 B.R. at 623 (quoting 28 U.S.C. § 1412).

[17] *Id.*

[18] Doc. 56 at 1.

[19] *City of Liberal v. Trailmobile Corp.*, 316 B.R. 358, 362 (D. Kan. 2004).

Second, Yellow is incorrect that three decisions in this District have "adopted" this view of § 1412.  Judge Vratil's decision in *Marc Vianello Revocable Trust v. Pete & Mac's Lenexa, LLC*, did not squarely address this issue, instead finding that the case "involves interpretation and enforcement of the confirmation order and operating agreement.  These matters are within the exclusive jurisdiction of the [transferee bankruptcy court]."[20]  The court found that transfer was appropriate under both §§ 1412 and 1404(a).[21]  Likewise, Judge Flannigan did not hold that § 1412 categorically applies to all non-core "related to" cases in *In re 1111 Prospect Partners, L.P.*[22]  The court stated, "[c]ourts considering motions to change venue under [§ 1412] have concluded that" a change of venue motion by an adversary to the home bankruptcy court is a core proceeding.[23]  That case was a removed Kansas state court deficiency proceeding with a pending motion to remand, and the court ultimately declined to transfer to the home bankruptcy liquidation proceeding, after finding no equitable grounds warranted "pluck[ing] the proceeding from the grasp of the state court that is about to decide the question and send[ing] it to California to a bankruptcy court with no interest in the problem."[24]  Instead, the court remanded the action to state court.[25]  While it is true that IBT is on the Unsecured Creditors Committee in the bankruptcy proceeding, Plaintiffs do not claim that this is an adversary proceeding.[26]

---

[20] No. 14-2090-KHV, 2014 WL 1974922, at *3 (D. Kan. May 15, 2014).

[21] *Id.*

[22] 204 B.R. 222, 224 (Bankr. D. Kan. 1996).

[23] *Id.*

[24] *Id.* at 226.

[25] *Id.*

[26] Federal Rule of Bankruptcy Procedure 7001 lists the types of relief that a party must seek through an adversary proceeding.  Such proceedings include "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee," and "a proceeding to determine the dischargeability of a debt."  Fed. R. Bankr. P. 7001(1), (6).

Only the *City of Liberal* decision squarely discusses the split of authority that applies in this case.  And, even there, Judge Marten stopped short of "adopting" the position that § 1412 covers non-core "related to" cases.  After collecting cases on both sides of the issue, Judge Marten explained that he "need not resolve the matter" because under either statute, transfer was appropriate.[27]  In dicta, Judge Marten stated that if he were to resolve the issue, he would follow the line of cases that Plaintiffs urge this Court to apply.[28]

In sum, the three cases Plaintiffs cite from this District did not "adopt" an approach to the question before this Court, and they do not convince the Court that § 1412 applies under these circumstances.  This Court follows the line of cases holding that § 1412 does not apply to cases and proceedings that are "related to" a case or proceeding under title 11.  And because this case is not "a case or proceeding under title 11" of the Bankruptcy Code, § 1412 does not apply to Plaintiffs' motion to transfer.  Instead, the Court must apply § 1404(a).

### B.      Whether Transfer Should be Granted Under § 1404(a)

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  "The district court has broad discretion under § 1404(a) to adjudicate motions to transfer based on a case-by-case review of convenience and fairness."[29]  The moving party

---

[27] *City of Liberal v. Trailmobile Corp.*, 316 B.R. 358, 362 (D. Kan. 2004).

[28] *Id.* n.2.

[29] *Key Constr., Inc. v. W. Surety Co.*, No. 22-1247-DDC, 2023 WL 2187291, at *4 (D. Kan. Feb. 23, 2023) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).

"bears the burden of establishing that the existing forum is inconvenient."[30]  This requires the Court to weigh several discretionary factors.[31]

Defendants argue that the Court need not consider the convenience and fairness factors under § 1404(a) because Plaintiffs could not have brought this case in the District of Delaware. The Court agrees.  Jurisdiction and venue in this case are governed by the Labor Management Relations Act ("LMRA") because the case alleges breach of contract "between an employer and a labor organization representing employees in an industry affecting commerce."[32]  29 U.S.C. § 185(c) provides two ways that a district court can have jurisdiction of a labor organization. First, "in the district in which such organization maintains its principal office."[33]  And second, "in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."[34]  Here, none of the Defendants have principal offices in Delaware.  The Local Unions have no officers or agents engaged in representing or acting for employee members in Delaware.

Plaintiffs make the circular argument that circumstances have changed since the time they originally filed this action; therefore, they could file the case today in Delaware because it is related to the pending Chapter 11 proceeding.   But section § 1404(a) only allows transfer to a district or division where the case "might have been brought."  The Supreme Court has

---

[30] *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).

[31] *Id.* (quoting *Chrysler Credit Corp.*, 928 F.2d at 1516).

[32] 29 U.S.C. § 185(a).

[33] *Id.* § 185(c)(1).

[34] *Id.* § 185(c)(2).

interpreted this "might have been brought" language to mean at the time of filing.[35]  Indeed, as the *Dunlap* case acknowledged, applying § 1404(a) instead of § 1412 "would, in perhaps a large number of cases, thwart transfer.  This is so because the related-to action might not have met, at the time of its filing, the jurisdictional or venue prerequisites making it capable of being 'brought' in the home court where the bankruptcy case is pending."[36]  It is undisputed that at the time of this case's filing, the District of Delaware did not have jurisdiction under the LMRA.  Because Plaintiffs could not have filed this LMRA case in Delaware when it was originally filed in June, the Court must deny Plaintiffs' motion to transfer under § 1404(a).

### C.      Transfer Factors

Transfer of venue under § 1412 is within the Court's discretion and Plaintiffs carry the burden of showing it is warranted by a preponderance of the evidence.[37]  Assuming, *arguendo*, that § 1412 applies to Plaintiffs' motion, the Court would not exercise its discretion to transfer this case in the interest of justice or for the convenience of the parties after considering the relevant factors.[38]

---

[35] *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960); *see also ESCO Corp. v. Cashman Equip. Co*., 65 F. Supp. 3d 626, 630 (C.D. Ill. 2014) (citing *Hoffman*, 363 U.S. at 343–44) ("To determine whether an action 'might have been brought' in a particular district, a court must look to the state of the world at the time of filing.").

[36] *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 678 (S.D. W. Va. 2005).

[37] *See, e.g.*, *In re Adkins Supply, Inc.*, No. 11-10353, 2015 WL 1498856, at *5 (Bankr. N.D. Tex. Mar. 27, 2015).

[38] As several courts have observed, the relevant factors under §§ 1404(a) and 1412 substantially overlap. *E.g.*, *City of Liberal v. Trailmobile Corp.*, 316 B.R. 358, 362 (D. Kan. 2004) ("The only substantial difference between the statutes is the additional requirement under § 1404(a) that an action may be transferred to any place where venue could have been valid originally.").  However, § 1412 "might be more generous to the moving party" since the public interest and convenience of parties considerations are listed in the conjunctive under § 1404(a) and the disjunctive under § 1412.  *In re Adkins Supply, Inc.*, 2015 WL 1498856, at *6.  The Court would reach the same conclusion if it applied the § 1404(a) factors.

1.      **Interest of Justice**

The following factors have been used by bankruptcy courts in this Circuit to determine whether to transfer venue in the interest of justice under § 1412:

> (1) the economic administration of the bankruptcy estate; (2) the presumption in favor of trying cases "related to" a bankruptcy case in the court in which the bankruptcy is pending; (3) judicial efficiency; (4) ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders; (6) enforceability of any judgment rendered; and (7) the plaintiff's original choice of forum.[39]

The economic administration of the bankruptcy estate factor is neutral.  The bankruptcy petitions were just recently filed.  While it is true that any recovery by Plaintiffs/Debtors in this case would become part of the bankruptcy estate, that fact standing alone does not mean that transfer will further the bankruptcy estate's economic administration.  If Plaintiffs recover, they will collect damages and the bankruptcy court will then be tasked with administering them.  Beyond estimating the total potential recovery Plaintiffs stand to gain if they prevail in this matter, and its share of Yellow's total assets, Plaintiffs provide no evidence that demonstrates how transfer would promote the administration of the estate, or that the costs of litigating in Kansas are higher than Delaware.

Defendants do not dispute that this case is "related to" the bankruptcy case because the outcome could conceivably have an effect on the bankruptcy estate.[40]  A presumption in favor of trying cases "related to" to the bankruptcy case in the bankruptcy court typically applies in such

---

[39] *In re James*, No. 11-29774, 2012 WL 5467542, at *3 (Bankr. D. Colo. Nov. 9, 2012); *see also In re Harwell*, 381 B.R. 885, 892 (Bankr. D. Colo. 2008); *Shaver v. Orthodontic Ctrs. of Colo., Inc*., No. 06-cv-00151, 2007 WL 38665, at *1–2 (D. Colo. Jan. 4, 2007); *In re Baker Hughes Oilfield Operations, Inc. v. Liberty Energy, LLC*, No. 10-8007, 2010 WL 1727930, at *3 (Bankr. E.D. Okla. Apr. 27, 2010).

[40] *See In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

cases.[41]  Yet, this not an adversary proceeding, and the substantive issues in this case—whether

Defendants breached the NMFA—will not be presented to the bankruptcy court, and are not

essential to administering the bankruptcy estate.  Also, "this factor and presumption are rebutted

and defeated when all of the other factors are weighed" and point against transfer.[42]  As

discussed below, because the other factors are either neutral or weigh against transfer, this

presumption has been rebutted.

Judicial efficiency weighs against transfer.  This factor considers issues such as

> the home court's familiarity with the substantive issues and
> familiarity with the law to be applied in the proceeding (i.e., the
> "learning curve"); the caseload of the respective courts and thus
> whether the time to trial is shorter or substantially longer in one
> forum as opposed to the other; [and] the respective availability of
> the courts for resolving discovery disputes and for moving the case
> toward trial at a reasonable pace given the issues involved.[43]

Neither party provides information about the relative caseloads, time to trial, or availability for

resolving discovery disputes as between Kansas and Delaware.  Plaintiffs contend that the

bankruptcy court is already familiar with the issues in this litigation because the same facts that

precipitated this case ultimately precipitated their decision to file the bankruptcy petitions—the

parties' impasse in negotiating a series of mergers sought by Yellow to modernize and upgrade

its business.  But as Defendants point out, there is no indication that the Delaware bankruptcy

court has any specific expertise in the labor law issues presented by this case.

Plaintiffs claim that at the First Day Motions hearing in bankruptcy court, they presented

facts to support their contention that Yellow's collapse was due to Defendants' breach of the

NMFA.  Specifically, they submitted Doheny's Declaration in support of the Chapter 11

---

[41] *See In re Harwell*, 381 B.R. at 892.

[42] *In re Bruno's, Inc.*, 227 B.R. 311, 329 (Bankr. N.D. Ala. 1998).

[43] *Id.* at 327.

Petitions and First Day Motions.[44]  That declaration simply sets forth Plaintiffs' version of the facts giving rise to this litigation; it fails to show that the bankruptcy court is "familiar" with the substantive issues and law to be applied in this case.  This Court, in contrast, held a substantive hearing on Plaintiffs' motion for injunctive relief before the bankruptcy case was filed, which included extensive argument and submissions on the likelihood of success on the merits.  The Court has also reviewed Defendants' motions to dismiss in conjunction with staging disposition of those motions with the motion to transfer.  Thus, the Court finds that the home court's lack of familiarity with the substantive issues in this case weighs against transfer.

Plaintiffs' ability to receive a fair trial and the enforceability of any judgment rendered are neutral factors.[45]  Additionally, the state's interest in having local controversies decided within its borders is neutral because this case presents issues under federal labor law.

Finally, Plaintiffs' choice of forum is neutral.  Typically, a motion to change venue is brought by a defendant and the Court affords a presumption in favor of the plaintiff's choice of venue, the original venue, when weighing the transfer factors.[46]  Under both §§ 1404(a) and 1412, the Plaintiff's choice of forum usually weighs against transfer, although that choice "receives less deference . . . if the plaintiff does not reside in the district"[47] or "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."[48]

---

[44] Doc. 48-4.

[45] The Court is not persuaded by Defendants' argument that they cannot get a fair trial in Delaware because they would be deprived of an Article III judge and jury trial.  Plaintiffs request transfer to the United States District Court for the District of Delaware, an Article III Court, which would then refer the case to its Bankruptcy Court. The reference can be withdrawn for trial, or any other matter if Defendants do not consent.

[46] *See El Dorado Chem. Co. v. Air Liquide Indus. U.S. LP*, No. CIV-14-0491, 2015 WL 11237486, at *2–3 (W.D. Okla. Oct. 19, 2015) (citing *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

[47] *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010).

[48] *Id.* (quoting *Cook v. Atchison, Topeka & Santa Fe Ry.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

Although Plaintiffs originally chose this forum to litigate, they have now changed their minds in light of their decision to file Chapter 11 petitions in a different jurisdiction after this case was filed.  Indeed, Plaintiffs' decision to file bankruptcy in Delaware was made soon after this Court denied their motions for injunctive relief asking this Court to stop the Unions' threatened strike and require IBT and TNFINC to immediately resume the mandatory grievance procedures of the NMFA for Yellow's One Yellow Phase 2 change of operations.  Defendants suggest that Plaintiffs should be held to their original choice of forum.

Nothing in the statute prohibits Plaintiffs from changing their minds and seeking transfer.[49]  But courts in this District have required plaintiffs seeking to transfer to show a change of circumstances since filing the suit.[50]  And the Court is mindful that, "a motion to transfer venue could become an unchecked tool for the plaintiff to shop among forums and between judges."[51]  Where evidence of forum shopping is present, courts in this district have given the Plaintiffs' new choice of forum no weight.[52]

Plaintiffs have shown a change in circumstances—their businesses are now in the midst of Chapter 11 proceedings in another District, and any recovery they would obtain in this matter would become part of the bankruptcy estate.  Nonetheless, there is also evidence of forum shopping given the procedural timeline.  Plaintiffs filed this action on June 27, 2023, naming not just IBT and TNFINC, but the Local Unions.  The First Amended Complaint is replete with

---

[49] *Ferens v. John Deere Co*., 494 U.S. 516, 521 (1990) ("Section 1404(a) . . . . says nothing about choice of law and nothing about affording plaintiffs different treatment from defendants.").

[50] *See Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc*., No. 08-1330-JTM, 2011 WL 2174946, at *5 (D. Kan. June 3, 2011).

[51] *KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212, 1215 (D. Kan. 1998) (quoting *Leiker v. Jarvis Prod. Corp*., No. 90-1179-C, 1990 WL 112974, at *2 (D. Kan. July 10, 1990)).

[52] *Leiker*, 1990 WL 112974, at *2; *Coral Grp., Inc. v. Shell Oil Co.*, No. 09-2291-EFM, 2010 WL 527501, at *2 (D. Kan. Feb. 9, 2010) (footnotes omitted); *Hall-Kimbrell Env't Servs., Inc. v. Archdiocese of Detroit*, 878 F. Supp. 1409, 1416 (D. Kan. 1995).

jurisdictional allegations about the connection between the facts of this lawsuit and Kansas.[53]

Plaintiffs sought injunctive relief on July 19, 2023, and the next day Defendants filed motions to

dismiss.  Within two days of Plaintiffs' motion for injunctive relief, the Court conducted a

hearing and orally denied the motion.  Less than three weeks later, Plaintiffs filed their voluntary

bankruptcy petitions in Delaware.  Instead of responding to the motions to dismiss, Plaintiffs

successfully argued to the Court that the motions to dismiss should be held in abeyance until this

Court could decide the transfer motions.  This timeline suggests that Plaintiffs may be trying to

avoid a ruling in this forum on the pending substantive motions in this case.  Given all of these

facts, the Court find that Plaintiffs' choice of forum is neutral.

On balance, the Court finds that the interest of justice factors weigh against transfer.

### 2. Convenience of Parties and Witnesses

Courts consider the following convenience factors under § 1412:

> (a) location and proximity of the parties; (b) ease of access to
> necessary proof; (c) convenience of witnesses, including their
> location and proximity; (d) location of the assets, including books
> and records; (e) availability of subpoena power for the unwilling
> witness; and (f) expenses related to obtaining witnesses.[54]

The location and proximity of the parties weighs against transfer.  Although Plaintiffs are

incorporated in Delaware, this factor focuses on "the physical location of the parties, rather than

their state of incorporation."[55]  There is no evidence that Plaintiffs are physically located in

Delaware.  Plaintiffs had a strong presence in Kansas at the time the First Amended Complaint

was filed.  Until 2022, Yellow maintained its headquarters in Kansas, and Yellow Corporation

---

[53] *See, e.g.*, Doc. 21 ¶ 40 ("[A] substantial part of the events giving rise to plaintiffs' claims occurred in this district, where until 2022, Yellow maintained its headquarters . . . ."); *see also* ¶¶ 39, 41, 46, 125, 179.

[54] *In re Adkins Supply, Inc.*, No. 11-10353, 2015 WL 1498856 (Bankr. N.D. Tex. Mar. 27, 2015) (quoting *In re Think3, Inc.*, 529 B.R. 147, 211 (Bankr. W.D. Tex. 2015)).

[55] *In re Think3, Inc.*, 529 B.R. at 211.

"maintain[ed] a significant operational presence in Overland Park, Kansas."[56]  Plaintiffs claim that their ties to Kansas changed when they filed their bankruptcy petitions since they ceased freight operations and are winding down their administration functions.  But they provide no information by which the Court could find by a preponderance of the evidence that their physical location is closer to Kansas or Delaware.

None of the Defendants are physically located in Delaware, although Delaware is closer in proximity to Washington, D.C.-based IBT and some members of TNFINC.  The Local Unions are based in Kansas and Missouri.  The Local Unions have no physical presence in or near Delaware, and Kansas is decidedly a more convenient forum for them based on location and proximity.

Plaintiffs argue that any inconvenience to the Local Unions is mitigated by the fact that they are represented by IBT's counsel based in Washington, D.C.  But the location of counsel is not a relevant factor for the Court to consider on a motion to transfer.[57]  Moreover, according to the declarations submitted by the Local Unions, IBT's counsel does not regularly represent them, and their primary counsel is Blake and Uhlig, based in Overland Park, Kansas.

Plaintiffs also argue that because IBT sits on the Unsecured Creditors Committee, it is "already involved in the Bankruptcy Case."[58]  But this fact does not demonstrate that it would be convenient for all Defendants to litigate the case in Delaware.  While IBT has filed a notice of appearance in the bankruptcy case, the U.S. Trustee's August 16 decision to place it on the Unsecured Creditors Committee does not demonstrate that Delaware is on balance a more convenient forum for all parties.  IBT is one of five Defendants in this case, and the Trustee's

---

[56] Doc. 21 ¶ 41.

[57] *See Bailey v. Union Pac. R.R.*, 364 F. Supp. 2d 1227, 1230 (D. Colo. 2005) (citations omitted).

[58] Doc. 48 at 14.

placement of it on the Committee does not indicate to the Court that IBT affirmatively sought to litigate there, or that it would be convenient for it to do so.

Plaintiffs concede that transfer to Delaware would not necessarily be more convenient for their witnesses.  They reference three Yellow executives they expect to be witnesses in this case, but state that "it will be equally convenient for each to appear in Delaware as it would be to appear in Kansas."[59]  They also argue that two key IBT witnesses are located in Washington, D.C., which is closer to Delaware.  But, again, the Local Unions and their members are primarily located in Kansas and it would be burdensome for them to travel to Delaware.  Therefore, the Court finds that this factor weighs against transfer.

Plaintiffs do not discuss the remaining factors—ease of access to necessary proof, location of the assets, availability of subpoena power for the unwilling witness, and expenses related to obtaining witnesses.  Defendants argue that they weigh against transfer.  As for ease of access to necessary proof, this factor is neutral because most of the documents in this case will be produced electronically.  As for subpoena power, because Yellow laid off most of its employees, some of whom likely reside in Kansas, Delaware may not be able to compel their testimony.[60]  And there is no evidence that it would be more expensive for the parties to obtain witnesses in Delaware as compared to Kansas.  In sum, the convenience factors weigh against transfer.

Accordingly, if the Court considered the motion to transfer under § 1412, it would deny the motion because Plaintiffs have failed to show by a preponderance of the evidence that transfer is warranted in the interest of justice or for the convenience of the parties.

---

[59] *Id.* at 13.

[60] Fed. R. Civ. P. 45(c)(1)(A).

**IV.     Conclusion**

In sum, the Court finds that § 1404(a), and not § 1412, governs Plaintiffs' motion to transfer.  Because this case could not have been brought originally in the United States District Court for the District of Delaware, the motion must be denied.  But even if the Court found that § 1412 applied and considered the relevant factors under that statute, it would deny Plaintiffs' motion for the reasons discussed herein.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion for Transfer (Doc. 47) is **denied**.   Plaintiffs shall respond to Defendants' Motions to Dismiss (Docs. 29, 31) by no later than **November 1, 2023**.  Defendants may reply by no later than **November 22, 2023**.

Dated: October 11, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE