## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **YELLOW CORPORATION et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 23-1131-JAR-ADM** |
| **INTERNATIONAL BROTHERHOOD OF TEAMSTERS et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiffs Yellow Corporation, YRC Inc. d/b/a YRC Freight, USF Holland LLC, New Penn Motor Express LLC, and USF Reddaway Inc. filed this action on June 27, 2023, alleging breach of a collective bargaining agreement between Plaintiffs and Defendants International Brotherhood of Teamsters ("IBT"), Teamsters National Freight Industry Negotiating Committee ("TNFINC"), Teamsters Local No. 696, Teamsters Local No. 795, and Teamsters Local No. 41 (collectively with Teamsters Local 696 and Teamsters Local 795, the "Local Unions").

On March 25, 2024, the Court granted Defendants' Motions to Dismiss[1] under Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiffs failed to exhaust the grievance procedure under the collective bargaining agreement.[2] Before the Court are Plaintiffs' Motion to Alter or Amend Judgment, and for Relief from Judgment and Order (Doc. 111), and Motion to Amend Scheduling Order and for Leave to File Proposed Second Amended Complaint (Doc. 113).

---

[1] Docs. 29, 31

[2] Doc. 109.

These motions are fully briefed and the Court is prepared to rule.[3]  As described more fully below, the Court denies Plaintiffs' motions to reconsider and for leave to amend.

## I.      Standard

Plaintiffs move for relief under Fed. R. Civ. P. 59(e), which gives the Court an opportunity "to rectify its own mistakes in the period immediately following" a ruling.[4]  Such a motion "may be granted when 'the court has misapprehended the facts, a party's position, or the controlling law.'"[5]  The moving party must be able to establish: (1) "an intervening change in the controlling law"; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) "the need to correct clear error or prevent manifest injustice."[6]  Motions to alter or amend are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[7]  And whether to grant a motion to reconsider is left to the Court's discretion.[8]

Plaintiffs also cite Rule 60(b) as a basis for relief.  Under that rule, the Court may relieve a party from final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic),

---

[3] The Court finds that oral argument would not materially assist it in ruling expeditiously on these motions.

[4] *Banister v. Davis*, 590 U.S. 504, 508 (2020) (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)).

[5] *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

[6] *Servants of the Paraclete*, 204 F.3d at 1012.

[7] *Nelson*, 921 F.3d at 929 (quoting *Servants of the Paraclete*, 204 F.3d at 1012).

[8] *Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010) (citing *In re Motor Fuel Temp. Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.[9]

Like a motion under Rule 59(e), a motion under Rule 60(b) does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[10]  The Court has discretion when granting a motion for relief from an order or judgment under Rule 60(b).[11]

## II.      The Court's March 25, 2024 Memorandum and Order

The claims in this case arise out of the YRCW National Master Freight Agreement for the Period of April 1, 2019 through March 31, 2024 ("NMFA").  Plaintiff Yellow Corporation ("Yellow") operated a large less-than-truckload shipping operation across North America through the following four subsidiaries also named as Plaintiffs in this case: (1) YRC, Inc., d/b/a/ Yellow Freight ("Yellow Freight"); (2) USF Holland, LLC ("Holland"); (3) New Penn Motor Express, LLC ("New Penn"); and (4) Reddaway (collectively, "Yellow Operating Companies"). Defendant IBT is a labor organization and one of the nation's largest unions.  Defendant TNFINC is a bargaining committee that represents the Teamster local unions in negotiations with Plaintiffs.   Defendants the Local Unions are all affiliated with IBT.

---

[9] Fed. R. Civ. P. 60(b).

[10] *Servants of the Paraclete*, 204 F.3d at 1012; *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

[11] *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998).

The Yellow Operating Companies employ most of their unionized employees under the terms of the NMFA.  TNFINC negotiates the NMFA on behalf of the Local Unions and their IBT members, and Yellow negotiates on behalf of the Yellow Operating Companies.  The parties to the NMFA are the Yellow Operating Companies,[12] the Local Unions, and the TNFINC.  Neither Yellow nor IBT are parties to the NMFA.

Plaintiffs alleged two claims for breach of the NMFA under Section 301 of the Labor Management Relations Act ("LMRA"),[13] based on Defendants' refusing to resolve seniority issues arising from Phase 2 of the One Yellow initiative, refusing to engage in the change of operations procedure ("CHOPS"), and requiring Plaintiffs to agree to wage increases as a condition for approving changes of operations.  Count 1 alleges breach of contract against all Defendants except IBT.  Count 2 alleges breach of contract against IBT on the theory that it instigated, ratified, and encouraged the other Defendants to breach the NMFA.

Plaintiffs alleged in the operative Amended Complaint that the grievance procedure in the NMFA does not apply to them because "they seek money damages that are unavailable through those procedures and because the Union's conduct constitutes repudiation, waiver, and estoppel of its right to compel compliance with those procedures."[14]  Defendants moved to dismiss for failure to exhaust the grievance procedure required by Article 8 of the NMFA.  Plaintiffs responded that they were not required to grieve, and that even if they were, they were excused from the grievance process because it would have been futile.

---

[12] The NMFA lists Yellow Freight, New Penn, and Holland as parties.  According to the Amended Complaint, Reddaway was not a signatory to the NMFA in 2019, but it agreed to become a signatory in June 2021, retroactive to April 1, 2021.  Doc. 21 at 24 n.4; Doc. 30-2.

[13] 29 U.S.C. § 185.

[14] Doc. 21 ¶¶ 202, 211.

The Court granted Defendants' motions to dismiss for failure to exhaust.  First, the Court found that the broad grievance provisions in Article 8 of the NMFA cover Plaintiffs' claims in this case, including their claim for damages.  Second, the Court found that Plaintiffs did not allege sufficient facts to support an exception to the exhaustion requirement.  Third, the Court denied Plaintiffs' single-sentence, footnoted request for leave to amend.

## III.    Discussion

Plaintiffs move to alter or amend judgment based on the need to correct clear error or prevent manifest injustice.  Plaintiffs also claim that newly-discovered evidence received after the briefing on the motions to dismiss closed justifies Rule 59(e) relief.  The Court addresses each basis for relief in turn.

### A.    Clear Error or Manifest Injustice

In order to be clearly erroneous, Plaintiffs must show that the Court's decision was "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment."[15]  Courts in this district have described manifest injustice to mean "direct, obvious, and observable error."[16]  Plaintiffs argue that the Court committed clear error or manifest injustice by: (1) finding that Article 8, Section 1 of the NMFA applied; (2) finding that Plaintiffs could have received monetary damages if they had pursued the grievance procedure in the NMFA; (3) not viewing the facts alleged in the light most favorable to Plaintiffs when considering the futility exception; and (4) denying leave to amend.  As described below, the Court's decisions on these issues did not constitute clear error or manifest injustice.

---

[15] *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ies, Inc.*, 259 F.3d 1226, 1236 (10th Cir. 2001) (quoting *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1331 (10th Cir. 1996)).

[16] *Gorenc v. Proverbs*, 447 F. Supp. 3d 1110, 1113 (D. Kan. 2020) (quoting *Hadley v. Hays Med. Ctr.*, No. 14-1055-KHV, 2017 WL 748129, at *2 (D. Kan. Feb. 27, 2017)).

1.      **NMFA's Grievance Provisions**

The Court first considered whether Plaintiffs' LMRA claims fell within the purview of the NMFA's grievance provisions.  Article 8 of the NMFA governs the grievance procedure.[17] Plaintiffs argue that the Court erred by applying and discussing Article 8, Section 1 *sua sponte*, without giving Plaintiffs an opportunity to address it.  They further argue that, had they been on notice that Defendants moved to dismiss based on Section 1 rather than Section 2, they would have objected that Section 1 does not apply to their LMRA claims for damages.

The Court finds no clear error, much less the reversible error that Plaintiffs baldly assert, in its consideration of Article 8, Section 1 of the NMFA.[18]  Plaintiffs are simply incorrect that the Court granted the motions to dismiss "on a basis the movant did not argue."[19]  IBT and TNFINC clearly stated in their opening brief:

> Here, the NMFA's dispute resolution procedure is exceedingly broad and covers any and all claims for violations and interpretations of the NMFA.  [*See* Ex. 1 at 20 (Art. 8, Sec. 1)]. The claims in this breach of contract case involve the interpretation and scope of contractual terms of art such as "change of operations" and interpretations of work jurisdictions across job classifications, work rules specific to each signatory company, as well as historical practices and the limitations thereof. . . .  Because Plaintiffs have failed to exhaust the contractual dispute resolution machinery under Article 8, Section 2 of the NMFA, their claims must be dismissed pursuant to Rule 12(b)(6).
>
> Indeed, it is that dispute resolution process to which the parties expressly agreed in Article 8 of the NMFA.  The Plaintiffs' efforts to circumvent the very process to which they agreed and which they have previously availed themselves of to obtain dismissal of a damage lawsuit against them should not be permitted and would do violence to established national labor policy and controlling Supreme Court precedent.  In short, because

---

[17] Doc. 65-1 at 44–73.

[18] *See Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1150, 1152 (10th Cir. 2017) (reversing an oral summary judgment ruling that was based on an argument that the movant's attorney did not make).

[19] Doc. 112 at 5.

> Plaintiffs' claims are all exclusively based on an alleged violation of the NMFA, they must be dismissed for failure to exhaust the dispute resolution procedures under that agreement.[20]

And in their reply brief, IBT and TNFINC quoted from Article 8, Section 1 in arguing that the NMFA contains a broad exhaustion requirement that applies to Plaintiffs' claims.[21]  The Court did not *sua sponte* consider Article 8, Section 1 when determining that the NMFA contained a broad grievance mandate that applied to Plaintiffs' claims.

Moreover, in construing the terms of the NMFA, the Court did not err by reading Article 8 in context.  As the Court described in the Order, Sections 1 and 2 must be read together to determine whether and how the grievance procedure applies to questions of interpretation arising out of the NMFA.  As the Court explained, the presumption in favor of arbitrability "is particularly applicable" to broad arbitration clauses.[22]  "In such cases, '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'"[23]  The opening statement in Article 8, Section 1 is undeniably broad,[24] and this Court found that Sections 1 and 2 read together do not expressly exclude a grievance such as Plaintiffs' from the NMFA's grievance process.

Plaintiffs now offer extensive new arguments construing Sections 1 and 2 together.  They claim that, contrary to the Court's interpretation, these sections provide mutually exclusive paths

---

[20] Doc. 30 at 13–14.

[21] Doc. 76 at 8.

[22] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

[23] *Id.* (alteration in original) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85 (1960)).

[24] Doc. 65-1 at 44 (NMFA art. 8, sec. 1) ("All grievances or questions of interpretations arising under this [NMFA] or Supplemental Agreements thereto shall be processed as set forth below.").

for the grievance procedure, and that only Section 2(a) could have provided a path for Plaintiffs to grieve, and that this Section 2(a) path would not have resulted in a final and binding determination.  These arguments should have been raised in Plaintiffs' responses to the motions to dismiss; therefore, the Court is not required to consider them under either Rule 59(e) or 60(b).  As the Court explained above, Plaintiffs were on notice that Defendants relied on Article 8 Sections 1 and 2 to support their failure to exhaust defense.

Nonetheless, the Court notes for the record that its interpretation of Sections 1 and 2 was not in error and that Plaintiffs' new arguments would not change the Court's ruling.  Plaintiffs read Section 1 as only applying to grievances under the supplemental agreements.  But Plaintiffs appear to ignore the language in Section 1(a) that follows the provision for disputes that arise under the supplemental agreements:

> *Any* request for interpretation of the [NMFA] shall be submitted directly to the Regional Joint Area Committee for the making of a record on the matter, after which it shall be immediately referred to the National Grievance Committee.  Such request shall be filed with both the Union and Employer secretaries of the National Grievance Committee with a complete statement of the matter.[25]

Then, in Section 1(b), the NMFA provides that:

> Any matter which has been referred pursuant to Section 1(a) above, *or any question concerning the interpretation of the provisions contained in the* [*NMFA*], shall be submitted to a permanent National Grievance Committee which shall be composed of an equal number of employer and union representatives.  The National Grievance Committee shall meet on a regular basis, for the disposition of grievances referred to it, or may meet at more frequent intervals, upon call of the chairman of either the Employer or Union representatives on the National Grievance Committee.  The National Grievance Committee shall adopt rules of procedure which may include the reference of disputed matters to subcommittees for investigation and report, with the final decision or approval, however, to be made by the

---

[25] *Id.* at 45 (NMFA art. 8, sec. 1(a)) (emphasis added).

> National Grievance Committee. *If the National Grievance*
> *Committee resolves the dispute by a majority vote of those present*
> *and voting, such decisions shall be final and binding upon all*
> *parties.*[26]

Section 1(b) goes on to provide that a deadlock at the National Grievance Committee is referred as provided in Section 2(b).

Section 2(a) begins by stating that "[t]he National Grievance Committee by majority vote may consider and review all questions of interpretation which may arise under the provisions contained in the [NMFA] which are submitted by either the Chairman of TNFINC or the Executive Director of TMI."[27]  It then discusses the impact of the National Grievance Committee's "resolutions of grievances by any lower level grievance committee or review committee involving or affecting the interpretation(s) of Articles 1-39 of the [NMFA]."[28] Section 2(b) governs the process for grievances that are deadlocked at the National Grievance Committee.

Thus, as the Court previously concluded, Sections 1 and 2 read together provide that any request for interpretation of the NMFA should be referred to the Regional Joint Area Committee in order to make a record, after which it must be directly referred to the National Grievance Committee.  If a question of NMFA interpretation is submitted by either the Chairman of TNFINC or the Executive Director of TMI, it is considered by the National Grievance Committee.  Either way, Section 1(b) provides that if the National Grievance Committee resolves the dispute by a majority vote, it is final and binding.  Nothing in the NGC Rules of Procedure contradicts this interpretation.  Article II of the Rules does provide, as Plaintiffs note,

---

[26] *Id.* (NMFA art. 8, sec. 1(b)) (emphasis added).

[27] *Id.* at 46 (NMFA art. 8, sec. 2(a)).

[28] *Id.*

that the National Grievance Committee has jurisdiction over "[q]uestions concerning interpretation of the provisions of the [NMFA], as provided in Article 8, Section 2."[29]  But that rule also provides that it has jurisdiction over "[a]ny other matter properly referred pursuant to the provisions of the [NMFA] or applicable supplemental agreements."[30]

Finally, even if the Court agreed with Plaintiffs' argument that the Court is confined to consider exhaustion under Section 2, Plaintiffs concede that they did not avail themselves of that grievance process.  Thus, the Court's conclusion that the broad grievance procedure in the NMFA applies to Plaintiffs' claims and that Plaintiffs did not exhaust that grievance process was not clear error, nor did it cause manifest injustice.

### 2.      Whether the NGC Could Have Awarded Money Damages

Next, Plaintiffs urge the Court to reconsider its ruling that the National Grievance Committee could have awarded Plaintiffs money damages.  But Plaintiffs offer the same arguments they put forth in their original opposition.  Rules 59(e) and 60(b) do not permit a losing party to rehash arguments previously addressed.  For the same reasons discussed in its March 25, 2024 Order, the Court determines that the language of the NMFA does not preclude the National Grievance Committee from awarding damages.  Notably, none of Plaintiffs' arguments on reconsideration actually go to the language of the NMFA.  Instead, Plaintiffs point out that the NMFA and NGC Rules fail to explain how the National Grievance Committee could award damages, and argue that it would be difficult for it to resolve issues like Plaintiffs' that are national in scope.  None of these arguments change the Court's original determination.

### 3.      Futility

---

[29] Doc. 30-3 at 2.

[30] *Id.* at 3.

Plaintiffs also argue that the Court erred in ruling that futility did not excuse Plaintiffs' failure to exhaust.  Specifically, Plaintiffs challenge the Court's determinations that (1) Plaintiffs failed to allege that they attempted to follow the NMFA's grievance procedure, as required to maintain the futility exception to exhaustion; (2) no allegations show that the grievance process is controlled by the Union Defendants; (3) Defendants' alleged failure to engage in the 2023 CHOPS process does not demonstrate that the grievance process is futile; and (4) the futility exception is narrow and not usually applicable to employer-Plaintiffs.  Plaintiffs reiterate their arguments in opposition to the motions to dismiss, which this Court previously rejected.  Thus, the Court need not address these arguments on a motion to reconsider under either Rule 59(e) or 60(b), and the Court stands by its March 25, 2024 Order.

As the Court stated in that Order, futility cannot be based solely on a subjective belief "that resort to those procedures would be a hollow act."[31]  The Court explained that even if Plaintiffs sufficiently alleged that they attempted to grieve their claims, there were insufficient allegations to support Plaintiffs' assertion that pursuing the grievance process was wholly futile. Nothing in Plaintiffs' motion to alter or amend changes the Court's analysis on the futility exception, nor demonstrates clear error or manifest injustice.

### 4.     Request for Leave to Amend

Plaintiffs' last point of error is that the Court improperly denied them leave to amend.  In a one-sentence footnote to their response briefs on the motions to dismiss, Plaintiffs requested leave to amend.[32]  As the Court explained in its March 25, 2024 Order, Plaintiffs failed to

---

[31] *Parham v. Carrier Corp.*, 9 F.3d 383, 392 (5th Cir. 1993).

[32] Doc. 65 at 10 n.3; Doc. 66 at 5 n.3.

separately move for leave to amend addressing the factors that the Court must consider,[33] failed to submit a proposed amended pleading for the Court's review,[34] and failed to explain how they could amend their pleading to cure their failure to exhaust. Therefore, the Court denied Plaintiffs' footnoted requests for leave to amend.

Plaintiffs argue that the Court should have allowed them leave to amend so that they could buttress the factual allegations in support of their futility defense. They have also filed a concomitant motion for leave to amend with a proposed amended pleading for the Court's review, as well as a request to modify the scheduling order. The Tenth Circuit "ha[s] long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court. Such 'shot[s] in the dark' do not request 'an order contemplated under the rules,' do not state any particular grounds for the request, and lack basis."[35] Plaintiffs' request was exactly the type of "shot in the dark" that is discouraged by the Tenth Circuit.[36] Thus, the Court did not commit clear error or manifest injustice in denying Plaintiffs' request for leave to amend.

### B.    Newly-Discovered Evidence

Plaintiffs argue that the Court should alter or amend the judgment based on newly-discovered evidence that buttresses its claim that exhaustion would be futile. Specifically,

---

[33] *See Duncan v. Manager*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quoting *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

[34] *See* D. Kan. R. 15.1.

[35] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) (second alteration in original) (quoting *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370–71 (10th Cir. 1989)); *see also Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999) ("Deriving a consistent approach from our case law, we conclude that a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it.").

[36] *Brooks*, 985 F.3d at 1283 ("Because we do not recognize Plaintiffs' single sentence as a cognizable motion, the district court did not abuse its discretion in denying that request.").

Plaintiffs argue that they discovered new evidence produced during discovery received in March 2024, after briefing closed on the motion to dismiss but before the Court ruled.  Because this newly-discovered evidence was included in voluminous electronic document productions, Plaintiffs submit that they were not able to discover the documents at issue until after the Court ruled.  According to Plaintiffs, this discovery supports their claim that IBT's General-President Sean O'Brien "used his control over the Union to destroy Yellow, and nothing—not pleas from his Teamsters brothers and sisters to work with Yellow or warnings from the Teamsters' economist about Yellow's precarious finances—changed his mind."[37]  Plaintiffs argue that had Defendants turned over this evidence earlier, they could have added more factual support to that claim by amending the pleading before the Court ruled and avoiding dismissal.

"Where a party seeks Rule 59(e) relief to submit additional evidence, 'the movant must show either that the evidence is newly discovered [or] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence.'"[38]  Here, Plaintiffs point to evidence that was produced before the Court's March 25, 2024 Order, thus, it was available "at the time of the decision."[39]  But assuming without deciding that Plaintiffs meet the newly-discovered evidence standard, despite being in possession of these documents before the Court's ruling, the Court does not consider evidence outside the

---

[37] Doc. 112 at 8.

[38] *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (alteration in original) (quoting *Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992)).

[39] *See Rezac Livestock Comm'n Co. v. Pinnacle Bank*, No. 15-CV-04958-DDC-KGS, 2017 WL 86190, at *4 (D. Kan. Jan. 10, 2017) (quoting *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 611 (10th Cir. 2012)).

pleadings on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) except in limited circumstances that do not apply here.[40]

Moreover, the Court agrees with Defendants that the evidence cited by Plaintiffs is duplicative of allegations that are already in the First Amended Complaint, which the Court rejected as insufficient to demonstrate futility.  Plaintiff's First Amended Complaint's allegations already include the fact that O'Brien was hostile and spearheaded Defendants' refusal to engage in the CHOPs procedure.[41]  Accordingly, the Court does not find that the new evidence referenced in Plaintiffs' motion would change the Court's March 25, 2024 decision.

### C.  Motion to Amend Scheduling Order and for Leave to File Proposed Second Amended Complaint

 "After a district court enters a final judgment, as occurred here, it may not entertain motions for leave to amend unless the court first sets aside or vacates the judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b)."[42]  As described above, because the Court finds no cause to set aside judgment under Rule 59(e), it must deny Plaintiffs' motion for leave to amend.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion to Alter or Amend Judgment, and for Relief from Judgment and Order (Doc. 111), and Motion to Amend Scheduling Order and for Leave to File Proposed Second Amended Complaint (Doc. 113) are **denied**.

**IT IS SO ORDERED.**

---

[40] *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (alteration omitted) (first quoting *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007); and then quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[41] *See, e.g.*, Doc. 21 ¶¶ 6–8, 12, 16, 18, 21, 23, 26–30, 32, 34, 36.

[42] *Combs v. PriceWaterhouseCoopers LLP*, 382 F.3d 1196, 1205 (10th Cir. 2004) (citing *Seymour v. Thornton*, 79 F.3d 980, 987 (10th Cir. 1996)); *see also Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021).

Dated: July 15, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
